**Harold HARDEN, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 182S18.

Supreme Court of Indiana.

Nov. 5, 1982.

Certiorari Denied Jan. 17, 1983.
See 103 S.Ct. 794.

Barbara B. Benson, Douglas R. Bridges, Berry, Bridges, Benson & Benson, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Harold Harden, was convicted by a jury of robbery resulting in bodily injury, a class A felony, Ind.Code § 35–42–5–1 (Burns 1979 Repl.) and conspiracy to commit robbery, a class C felony, Ind.Code § 35–41–5–2 (Burns 1979 Repl.) and was sentenced to concurrent terms of thirty and five years respectively. His direct appeal raises the following six issues:

1. Whether the trial court erred in admitting into evidence the transcribed statement of a co-defendant, Jack Sater;

2. Whether the trial court erred in admitting into evidence the transcript and tape of the statement of another co-defendant, Gary Taylor, and a transcript of Taylor's former testimony;

3. Whether the trial court erred in admitting certain photographs into evidence;

4. Whether there was sufficient evidence on all the necessary elements of the offenses to support the verdict of the jury;

5. Whether there was sufficient newly discovered evidence to require the granting of a new trial for defendant; and

6. Whether the trial court erred in failing to give an instruction regarding the testimony of an accomplice.

A brief summary of the facts from the record most favorable to the state shows that late in the evening of December 23, 1980, several men met at the home of John Grubbs to discuss plans for robbing an elderly couple, Albert and Viola Steward, who were believed to keep large quantities of money in their home. The men involved were Jack and Merle Sater, Gary Taylor, Douglas Pitman, defendant, and Grubbs. Defendant's thirteen year old son was also present. The men made preparations for the robbery by obtaining ski masks, gloves, and a shotgun. They rode to the Stewards' residence in Pitman's car, except for Grubbs who remained at his home. When they reached the Stewards' house, defendant and his son stayed in the car while the other four went inside. The Stewards were severely beaten and approximately $4,000 were taken.

When Jack Sater returned to the car, he handed a pillowcase full of money to defendant and they all returned to the residence of Grubbs. The money was divided among Jack and Merle Sater, Pitman, and defendant. Jack Sater testified at defendant's trial about defendant's participation in the robbery and the conspiracy. Gary Taylor also testified but gave some conflicting evidence about defendant's participation. Defendant was originally tried on the instant charges in May, 1981, but that trial resulted in a hung jury and the instant trial was held in July, 1981.

### I.

Jack Sater testified at defendant's trial pursuant to a plea agreement with the state. He stated that defendant was the one who knew there was an old couple "that had a bunch of money that we could get off of them." He also testified that defendant owned the shotgun that was used during the robbery, that defendant told them to put on masks and gloves, and that defendant was the one who divided up the loot. During the redirect examination of Sater, a transcript of a statement Sater had given to the police on January 20, 1981, was admitted into evidence. This statement contained substantially the same facts concerning defendant's involvement in the instant crime as Sater testified to at the trial. Sater acknowledged that he had given an oral statement to police and that the state's exhibit was a transcript of that statement.

Defendant contends that the trial court erred in admitting this statement into evidence on the ground that it was a mere substitute for available in-court testimony. The prosecution attempted to introduce this statement during the direct examination of Sater, but defendant's objection was sustained. On cross-examination, defense counsel introduced a letter Sater had written to him from jail to the effect that Sater would testify that defendant didn't know about the instant robbery but only thought there would be some kind of "dope deal." Defense counsel then attempted to bring out that the contents of this letter and the contents of some statements Sater made to the police earlier were different from his testimony at trial. On redirect, the statement given to the police by Sater was admitted into evidence over defendant's objection.

It is clear that the statement to the police was relevant to show that while Sater's testimony about some details of the commission of the crime were different at trial, his testimony about defendant's involvement in both the crime and the conspiracy was essentially the same. This Court has clearly held that extrajudicial statements of witnesses who testify and are subject to cross-examination are admissible as substantive evidence insofar as they are relevant. *Williams v. State*, (1981) Ind., 426 N.E.2d 662; *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482. The statement here meets these requirements, and it was not error for the trial court to admit it into evidence.

### II.

Defendant contends that it was error to admit three of the state's exhibits,

No. 14 and No. 21, which were the transcript and the tape of Gary Taylor's prior statement to police, and No. 20, which was a transcript of Taylor's testimony in defendant's former trial. Taylor testified for the state pursuant to a plea agreement. In his direct examination he contradicted previous statements and said he couldn't remember many details of the crime and that defendant, who was his uncle, had not really participated in the planning of the robbery. The court declared Taylor to be a hostile witness. After Taylor's prior statements and former testimony had been brought up during cross-examination, the court allowed the complained of exhibits to be admitted during the state's redirect examination. We find that the transcript and tape of Taylor's prior statement were properly admissible for the reasons set forth in Issue I above.

Defendant also alleges that there were discrepancies between the tape and the transcript, but the record shows that the jury was allowed to hear the full tape and compare it with the transcript. Furthermore, defendant did not object at trial on this ground so any alleged error on this issue has been waived. Grounds for objection must be specific and any grounds not raised in the trial court are not available on appeal. *Brown v. State,* (1981) Ind., 417 N.E.2d 333; *Strickland v. State,* (1977) 265 Ind. 664, 359 N.E.2d 244.

Defendant further contends that the transcript of Taylor's former testimony, the state's exhibit No. 20, was not admissible because Taylor was in court and available to testify. However, it is clear from the record that Taylor was declared to be a hostile witness and did contradict his former testimony. Therefore, the state could properly impeach Taylor by the use of his prior testimony. Ind.Code § 34–1–14–15 (Burns 1973); *Rodgers v. State,* (1981) Ind., 422 N.E.2d 1211; *King v. State,* (1973) 260 Ind. 422, 296 N.E.2d 113. We find no error in the admission of these exhibits.

## III.

[5] Defendant next alleges that the court erred in admitting into evidence photographs of the scene of the crime and of the two victims. Defendant objected to the photographs on the basis that they were not relevant as he admitted throughout the trial that the robbery had been committed and the Stewards had been injured. He contends that the photographs served no purpose except to inflame the minds of the jury and prejudice them against him. We find no merit to this contention. It is clear that the state was required to prove the *corpus delicti* of the instant crime, including the injuries to both the Stewards and the state of disarray in which the robbers left their home, as defendant was liable as an accomplice for all the events of the crime.

The fact that a photograph might arouse the jury is not sufficient ground in itself to justify its exclusion as long as the evidence is material and relevant. Relevancy of a photograph is determined by an inquiry as to whether a witness would be permitted to describe the objects or scenes to be photographed. *Chandler v. State,* (1981) Ind., 419 N.E.2d 142; *Moore v. State,* (1981) Ind., 414 N.E.2d 558; *Tinsley v. State,* (1977) 265 Ind. 642, 358 N.E.2d 743. Here, a police officer specifically described the scenes depicted by the photographs and attested to their accuracy. There was no error in the admission of the photographs in this case.

## IV.

Defendant next contends that there was not sufficient evidence to support the jury's verdict. He points out that the state's witnesses, Sater and Taylor, gave conflicting testimony about his participation in the planning of the crime and that it was clearly established that he did not leave the car at the scene of the robbery.

In considering the sufficiency of the evidence, it is firmly established that as a court of review, we will neither reweigh the evidence nor judge the credibility of witnesses. Rather, we will look only to that

evidence most favorable to the state and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Fielden v. State,* (1982) Ind., 437 N.E.2d 986; *Duffy v. State,* (1981) Ind., 415 N.E.2d 715; *Wofford v. State,* (1979) Ind., 394 N.E.2d 100. The law clearly provides that an offense is committed whenever one intentionally or knowingly aids, induces, or causes that offense to be committed. Ind.Code § 35–41–2–4 (Burns 1979 Repl.); *Fielden v. State, supra.* We have consistently held that concerted action or participation in a crime is sufficient for this purpose. *Webb v. State,* (1977) 266 Ind. 554, 364 N.E.2d 1016; *Jewell v. State,* (1974) 261 Ind. 665, 309 N.E.2d 441. A conviction may be based upon the uncorroborated testimony of an accomplice. The fact that an accomplice is induced to testify by a benefit offered to him goes to the weight of the testimony only. *Moore v. State,* (1978) 268 Ind. 519, 376 N.E.2d 1129; *Coleman v. State,* (1975) 264 Ind. 64, 339 N.E.2d 51.

In the instant case, one of defendant's accomplices, Jack Sater, testified that defendant was directly involved in the planning of the robbery, provided the shotgun which was used, gave directions to the victims' home, received the entire amount of money taken, and subsequently divided this money among the participants and accepted one-fourth of it. The jury was fully informed about Sater's plea agreement with the state and the letter he had written to defendant's attorney prior to trial which did not agree with his trial testimony. They were also fully aware of the inconsistencies in Taylor's testimony. The credibility of the witnesses was for the jury to determine. There was sufficient evidence to sustain the verdicts in this case as it is unnecessary that an accomplice act out each element of an offense. The acts of one accomplice are imputed to all others and an accomplice is criminally liable for everything done by his confederates which was a probable and natural consequence of their common plan. *Proctor v. State,* (1979) Ind., 397 N.E.2d

980; *Dozier v. State,* (1976) 264 Ind. 329, 343 N.E.2d 783.

## V.

Defendant next contends that he should have been granted a new trial because of newly discovered evidence. He alleges that two letters and a statement given by Jack Sater after the instant trial constituted newly discovered evidence which would warrant granting him a new trial. The letters were written to defendant's attorney shortly after the trial and essentially stated that defendant didn't have anything to do with the robbery or the conspiracy and the only money he received was from a drug deal. Sater also submitted a statement by affidavit about three months after the trial saying that defendant didn't have anything to do with the robbery and wasn't present during the robbery.

It is well settled that when a new trial is requested based upon newly discovered evidence the moving party must show that the evidence meets several requirements including the fact that it is worthy of credit, due diligence was used to discover it in time for trial, and that it will probably produce a different result upon a second trial. *Carter v. State,* (1982) Ind., 438 N.E.2d 738; *Tessely v. State,* (1978) 267 Ind. 445, 370 N.E.2d 907. A motion for a new trial predicated on newly discovered evidence is viewed with disfavor, and the denial of the motion will be reversed only if the trial court abused its discretion in concluding that a different result upon retrial would not have been possible. *Carter v. State, supra; Hicks v. State,* (1981) Ind., 426 N.E.2d 411; *Helton v. State,* (1980) Ind., 402 N.E.2d 1263.

In this case, Sater's letters and statement were contradictions of his sworn trial testimony and his initial statement to the police which significantly diminished their credibility. Furthermore, another letter was introduced at trial which Sater had written to defendant's attorney prior to the instant trial with similar statements about defendant not being involved in the rob-

bery. At the trial, a hearing was held outside the presence of the jury in which Sater denied the truth of the first letter and stated that defendant "wanted me to make up something so it would clear him in court." We find no error in denying a new trial under the circumstances of this case.

## VI.

■ Defendant finally contends that the trial court erred in not giving a cautionary instruction regarding accomplice testimony, even though he had not tendered one himself. It is true that many federal courts approve such instructions but they generally do not find error per se in the absence of a request for such an instruction. *United States v. Fortes* (1st Cir.1980), 619 F.2d 108.

■ This Court has consistently held that any alleged errors concerning the trial court's instructions are waived when a defendant does not tender his own correct instruction. *Clemons v. State,* (1981) Ind., 424 N.E.2d 113. Furthermore, in this case, the court properly instructed the jury on the credibility of witnesses and weighing the evidence. This Court has consistently held that it is improper for a trial court to give an instruction which comments on the competency of or the weight to be given to the testimony of any particular witness as this would invade the province of the jury. *Gadacz v. State,* (1981) Ind., 426 N.E.2d 376; *Drollinger v. State,* (1980) Ind., 408 N.E.2d 1228. There was no error here.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

PRENTICE, J., concurs in result.